IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>$10,600.00 IN U.S. CURRENCY,<br><br>Defendant. | Civil No. 3:18-cv-00126<br><br>VERIFIED COMPLAINT FOR<br>FORFEITURE *IN REM* |

Plaintiff, United States of America hereby files and serves this VERIFIED COMPLAINT IN REM and alleges as follows:

## I.  NATURE OF THE ACTION

1. This is an action to forfeit and condemn specific property to the use and benefit of the United States of America ("Plaintiff") for involvement, as set forth below, in violations of 21 U.S.C. § 846 (attempt and conspiracy) and § 841(a)(1)(prohibited acts).

2. The defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as money or a thing of value furnished or intended to be furnished by a person in exchange for a controlled substance, in violation of subchapter I – Control and Enforcement, of Chapter 13 – Drug Abuse Prevention and Control, and Title 21 – Food and Drugs, of

the United States Code, and proceeds traceable to such an exchange, and money used or intended to be used to facilitate any violation of said subchapter.

## II.  DEFENDANT *IN REM*

3. The defendant property is generally described as $10,600.00 in United States currency seized in the execution of a search warrant at the residence of 642 West 51st Street, Davenport, Iowa. The defendant property is in the custody of the U.S. Drug Enforcement Agency.

## III. JURISDICTION AND VENUE

4. This Court has jurisdiction over an action commenced by the United States of America under 28 U.S.C. Section 1345 and over an action for forfeiture under 28 U.S.C. Section 1355(a).

5. This Court has *in rem* jurisdiction and venue over the defendant property under 28 U.S.C. Sections 1355(b) and 1395(b) as the acts or omissions giving rise to the forfeiture occurred in this district and because the defendant property was seized from and is located in this district.

## IV. FACTS

6. The "Controlled Substances Act" was enacted by Congress as Title II of the "Comprehensive Drug Abuse Prevention and Control Act of 1970," Pub.L. No. 91-513, 84 Stat. 1236 (1970) (codified at 21 U.S.C. §§ 801-904).

7. The term "controlled substance" is defined in 21 U.S.C. § 802(6) to mean a drug or other substance, or immediate precursor, included in any of the five schedules of such substances set forth in subchapter I of Title 21.

8. Schedule I substances have a high potential for abuse, and have no currently accepted medical use in treatment in the United States, and there is a lack of accepted safety for use of the drug under medical supervision. 21 U.S.C. § 812(b)(1)(A) - (C).

9. Schedule I substances include heroin. 21 U.S.C. § 812(b), Schedule II(b)(10).

10. Under the Controlled Substances Act, it is unlawful to distribute, dispense, or possess with intent to distribute a controlled substance unless authorized by law to do so. 21 U.S.C. § 841(a)(1).

11. Under the Controlled Substances Act, it is unlawful to conspire with others to violate its prohibitions. 21 U.S.C. § 846.

12. It is believed that, or will be after a reasonable opportunity for further investigation and discovery, evidence will show the defendant property constituted the proceeds of a prohibited controlled substance offense, or was used or intended to be used to facilitate a prohibited controlled substance offense.

13. On November 13, 2017, Derrick Anthony Stewart (hereinafter "Stewart"), from who the defendant property was seized, pled guilty in the U.S. District Court for the Southern District of Iowa of conspiracy to manufacture, distribute, and possess with the intent to deliver heroin, and of being a felon illegally in possession of a firearm.

14. The conspiracy in which Stewart participated spanned from at least January 2008 until on or about March 10, 2017.

15. As part of the conspiracy, Stewart and his primary co-conspirator/partner regularly travelled from the Southern District of Iowa to Chicago, Illinois, approximately at least once a week, to purchase heroin to sell to other people.

16. At times pertinent to the conspiracy, Stewart resided at 642 West 51st Street in Davenport, Iowa.

17. As part of the conspiracy, Stewart sold heroin to other people, for money.

18. On March 2, 2017, law enforcement executed a search warrant at Stewart's residence in Davenport, Iowa.

19. Two firearms were seized from the residence, and both were traced to known heroin users.

20. At the residence, law enforcement officers located evidence of drug dealing, including a digital scale, a roll of aluminum foil commonly used to package heroin, and empty foil prepared to be used to package heroin.

21. Inside a locked safe in Stewart's residence law enforcement discovered a clear plastic baggie containing 15.18 grams of heroin, the defendant property ($10,600 in U.S. Currency), and another, loaded firearm.

22. During a post-Miranda interview, Stewart confessed that he and his partner purchased heroin for personal use and for distribution. For the past five to six years, they traveled to Chicago, Illinois, to obtain

heroin. Stewart did not go to Chicago, Illinois, without her. Three years prior, their heroin source was arrested, and they found a new source. For the next three years, the new source supplied Stewart and his partner with heroin. During the first year, Stewart and his partner purchased 20 grams every other week for $3,000. During the second year, they purchased 25 grams of heroin every other week. During the third year, they purchased 50 grams every other week. Stewart was supposed to meet his source that day to purchase heroin utilizing some of the money located in the safe in bedroom. His partner had arranged the purchase that morning. The longest they had gone without purchasing heroin was two weeks.

23. In a subsequent interview, Stewart and his partner admitted they were addicted to heroin. They contacted their source on the day of or the day prior to the purchase of heroin to arrange the transaction. They always paid the source $6,000 for 50 grams of heroin. They did not need to tell the source the quantity or negotiate the price because it was a standing order. Stewart and his partner typically met the source in a Walgreens parking lot on the south side of Chicago, Illinois. Stewart's partner would get into the source's vehicle and exchange the money for a

sealed Doritos bag containing the heroin. According to text messages Stewart showed law enforcement, Stewart and the source made plans to meet nine times from December 5, 2016, until February 24, 2017, thus meeting every nine days on average. For the year leading to Stewart's arrest and conviction, he and his partner purchased 50 grams of heroin every time they traveled to Chicago, Illinois.

24. In his Plea Agreement in *United States v. Stewart*, 3:17-cr-24 (S.D. Iowa), Stewart admitted he and his partner had bought and sold heroin for approximately 5 to 6 years, paying as much as $6,000 for 50 grams of heroin, and that the defendant property, namely $10,600 in U.S. currency, was found in a safe in his residence, along with heroin and a loaded firearm. He also admitted law enforcement found a digital scale and other drug-dealing items in his residence.

25. At his September 18, 2017 change of plea hearing, Stewart was placed under oath and admitted he joined a conspiracy to distribute heroin sometime after January 2008 and before March 2017, knowing the nature of the agreement, and he acquired heroin in Chicago, which he distributed in Iowa.

26. Based on the foregoing facts, and others, the defendant property was used or intended to be used to facilitate illegal sales of heroin as part of the conspiracy in which Stewart and others participated.

## CLAIM FOR RELIEF

WHEREFORE, the United States prays that the defendant property be forfeited to the United States and that it be awarded its costs and disbursements in this action and for such other and further relief as the Court deems property and just.

Respectfully submitted,

Marc Krickbaum
United States Attorney

By: /Craig Peyton Gaumer
Craig Peyton Gaumer
Assistant United States Attorney
U. S. Courthouse Annex,
Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: craig.gaumer@usdoj.gov

## VERIFICATION

I, Task Force Officer Douglas M. Scott, hereby verify and declare under penalty of perjury that I am a Task Force Officer with the United States Drug Enforcement Administration, and that I have read the foregoing Verified Complaint *in Rem, United States v. $10,600.00 in U.S. Currency* and know the contents thereof and the matters contained in the Verified Complaint are true to my own knowledge, except for those matters not within my own personal knowledge and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds for my belief are the official files and records of the United States and information provided to me by other law enforcement officers, as well as my investigation of this case, together with others, as Task Force Officer with the United States Drug Enforcement Administration.

Dated: December 12, 2018.

_____
Douglas M. Scott, Task Force Officer
U.S. Drug Enforcement Administration